IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ADORN BARBER & BEAUTY LLC,

    Plaintiff,

v.                             Civil Action No. 3:20CV418

TWIN CITY FIRE INSURANCE
COMPANY,

    Defendant.

## MEMORANDUM OPINION

This matter is before the Court on the DEFENDANT TWIN CITY FIRE INSURANCE COMPANY'S RENEWED RULE 12(b)(6) MOTION TO DISMISS (ECF No. 52) ("RENEWED MOTION TO DISMISS"). Twin City Fire Insurance Company ("Twin City"), pursuant to Federal Rule of Civil Procedure 12(b)(6), requests the Court to dismiss the AMENDED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF ("FAC") (ECF No. 34) filed by Adorn Barber & Beauty LLC's ("Adorn"). For the reasons set forth below, the RENEWED MOTION TO DISMISS will be granted.

## BACKGROUND

### A. Statement of Facts

As required, the facts in the FAC are taken as true. All inferences are accorded in Adorn's favor.

At all relevant times, Adorn, a Virginia limited liability company, maintained an insurance contract with Twin City, an

insurance carrier that is a wholly owned subsidiary of The Hartford Financial Services Group, Inc. (usually known as "The Hartford"), whose principal place of business is in Hartford, Connecticut, where its headquarters are located. Twin City conducts insurance business within Virginia. See FAC, ¶¶ 10-11, ECF No. 34. Twin City issued an insurance policy numbered 65 SBA AA3524 to Adorn for the period of March 1, 2020 to March 1, 2021. See id. at ¶ 12; EX. 1 Policy and Declaration ("Policy"), ECF No. 1-1. The Policy was based on language "that is essentially standardized language adopted from and/or developed by the ISO ('Insurance Service Office')." FAC ¶ 26, ECF No. 34. ISO "provides advisory services and information to many insurance companies" and "develops and publishes policy language that many insurance companies use as the basis for their products." Id.

On March 12, 2021, the Commonwealth of Virginia declared a State of Emergency due to the COVID-19 pandemic. Id. at ¶ 61. On March 23, Governor Ralph Northam issued Order 53, which required all nonessential businesses in Virginia to stop operations and physically close. Id. at ¶ 62. The pandemic and subsequent state and local orders mandating the closure of all non-essential business caused Adorn, like other businesses around the globe, to close its business on March 24, 2020. Id. at ¶ 3. The closure resulted in over $150,000 in losses and forced Adorn to dismiss

part-time employees, and it expects to reduce the salaries of its full-time employees. Id. at ¶¶ 5, 72.

Adorn alleges that its damages were caused both by the contamination of its facilities by the COVID-19 virus and the Virginia COVID-19 related orders. Adorn argues that the Policy covers business income losses and extra expenses attributable to the virus and the virus-related orders by the Virginia government. Id. at ¶¶ 79-81; ECF No. 54 at 7. Because Twin City takes the opposite view, Adorn seeks a declaratory judgment that the Policy covers those business losses. FAC ¶¶ 88-91, ECF No. 34. Specifically, Adorn seeks to recover losses under the Business Income, Extra Expense, and Civil Authority provisions in the Policy. Id. at ¶¶ 37, 43; ECF No. 54 at 6.

Twin City's position is that, under the unambiguous text of the Policy, Adorn's claims are not covered, because the Policy does not cover virus-related losses for the reason that those losses are excluded from coverage under the "'Fungi', Wet Rot, Dry Rot, Bacteria And Virus" Exclusion ("Virus Exclusion") and that the Civil Authority provision does not afford coverage. Thus, Twin City seeks dismissal of the FAC under Fed. R. Civ. P. 12(b)(6). See generally MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT TWIN CITY FIRE INSURANCE COMPANY'S RENEWED RULE 12(b)(6) MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT (ECF No. 53).

**B. Contractual Provisions**

The dispute revolves around the Policy provisions pertaining to Business Income, Extra Expense, Civil Authority, Specified Cause of Loss, and Limited Fungi, Bacteria, and Virus Exclusion coverage. Those provisions are set forth below.

**1. Business Income Coverage**

The Business Income provision states that Twin City:

> (1) [W]ill pay for the actual loss of Business Income . . . due to the necessary suspension of your 'operations' during the 'period of restoration'. The suspension must be caused by direct physical loss of or physical damage to property at the 'scheduled premises' . . . caused by or resulting from a **Covered Cause of Loss**.
> . . .
> (4) Business Income means the: (a) Net Income . . . that would have been earned or incurred if no direct physical loss or physical damage had occurred; and (b) Continuing normal operating expenses incurred, including payroll. . . .

EX. 1 ("Policy") at 47, ECF No. 1-1 (emphasis added). Notably, the "Covered Cause of Loss" provision includes "RISKS OF DIRECT PHYSICAL LOSS" unless the loss is part of an exclusion or limitation delineated in the Policy. Id. at 39.

**2. Extra Expense**

The Extra Expense provision states that Twin City:

> (1) [W]ill pay reasonable and necessary Extra Expense you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or physical damage to property at the 'scheduled premises' . . . caused by or resulting from **Covered Cause of Loss**.
> . . .

4

> (3) Extra Expense means expense incurred: (a) To avoid or minimize the suspension of business and to continue 'operations': (i) At the 'scheduled premises'; . . . (b) To minimize the suspension of business if you cannot continue 'operations'. (c) (i) To repair or replace any property . . .
>
>     . . .
> (4) With respect to the coverage provided in this Additional Coverage, suspension means: (a) The partial slowdown or complete cessation of your business activities; or (b) That part or all of the 'scheduled premises' is rendered untenantable as a result of a **Covered Cause of Loss** if coverage for Extra Expense applies to the policy.

Id. at 47-48 (emphasis added).

### 3. Civil Authority

The Civil Authority provision states that:

> (1) This insurance is extended to apply to the actual loss of Business Income you sustain when access to your 'scheduled premises' is specifically prohibited by **order of a civil authority as the direct result of a Covered Cause of Loss** to property in the immediate area of your 'scheduled premises'.

Id. at 48 (emphasis added).

### 4. Limited Fungi, Bacteria or Virus Coverage

The Policy contains a "LIMITED FUNGI, BACTERIA OR VIRUS COVERAGE" ("Virus Exclusion") provision that delineates exclusions to the Standard Property Coverage Form and the Special Property Coverage Form. Id. at 135. The Virus Exclusion states that Twin City:

> will not pay for loss or damage caused directly or indirectly by" the "[p]resence, growth, proliferation, spread or any activity of 'fungi', wet rot, dry rot, bacteria or virus

and that

> [s]uch loss or damage is excluded regardless of any
> other cause or event that contributes concurrently or
> in any sequence to the loss[;] however, if 'fungi',
> wet rot, dry rot, bacteria or virus results in a
> 'specified cause of loss' to Covered Property, we will
> pay for the loss or damage caused by that 'specified
> cause of loss.' The exclusion applies whether or not
> the loss event results in widespread damage or affects
> a substantial area.

Id. at 136.[1]

## 5. Specified Cause of Loss

If the "virus results in a 'specified cause of loss' to

Covered Property[,]" Twin City will "pay for the loss or damage

caused by that specified cause of loss." Id. The Policy defines

"specified cause of loss" as:

> Fire; lightning; explosion, windstorm or hail; smoke;
> aircraft or vehicles; riot or civil commotion;
> vandalism; leakage from fire extinguishing equipment;
> sinkhole collapse; volcanic action; falling objects;
> weight of snow, ice or sleet; water damage.

Id. at 62.

DISCUSSION

## A. Legal Standards

## 1. Motions Under Fed. R. Civ. P. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits the

dismissal of actions that do not state a claim upon which relief

---

[1] The exclusion does not pertain to fungi, wet or dry rot, bacteria
or virus resulting from fire or lightning, id. at 136, but that is
not an issue here.

can be granted. Thus, a motion to dismiss "tests the sufficiency of a complaint." Columbia v. Haley, 738 F.3d 107, 116 (4th Cir. 2013). To survive a motion to dismiss, the factual allegations set forth in the complaint must be sufficient to "'to raise a right to relief above the speculative level' and 'state a claim to relief that is plausible on its face.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "A claim is 'plausible on its face,' if a plaintiff can demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" Rockville Cars, LLC v. City of Rockville, 891 F.3d 141, 145 (4th Cir. 2018) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

When contemplating a motion to dismiss under Rule 12(b)(6), a court "must accept the factual allegations of the complaint as true and construe them in the light most favorable to the nonmoving party." Rockville Cars, 891 F.3d at 145. However, courts need not "accept as true a legal conclusion couched as a factual allegation." SD3, LLC v. Black & Decker (U.S.) Inc., 801 F.3d 412, 422 (4th Cir. 2015) (quoting United States v. Triple Canopy, Inc., 775 F.3d 628, 632 n.1 (4th Cir. 2015)) (internal quotations omitted). And, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

Although assessment of a Rule 12(b)(6) motion must be generally limited to the allegations in the complaint, where a

7

copy of a written instrument is attached as an exhibit to the complaint or incorporated in it by reference, the instrument is part of the complaint, and a court may consider it in deciding the motion seeking dismissal under Rule 12(b)(6). Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016); Sec'y of State for Defense v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007); see also Fed. R. Civ. P. 10(c) ("A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion. A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

**2. Virginia Law**

Adorn and Twin City agree that Virginia law applies to the present claims. See FAC ¶ 6, ECF No. 34; ECF No. 53 at 7; ECF No. 54 at 7. Under Virginia law, "a contract is made when the last act to complete it is performed, and in the context of an insurance policy, the last act is the delivery of the policy to the insured." Seabulk Offshore, Ltd. v. Am. Home Assurance Co., 377 F.3d 408, 419 (4th Cir. 2004); Evanston Ins. Co. v. Harbor Walk Dev., LLC, 814 F. Supp. 2d 635 (E.D. Va. 2011); Buchanan v. Doe, 246 Va. 67, 71, 431 S.E.2d 289, 291 (1993).

According to Virginia law, courts must interpret insurance policies as a question of law. See Nationwide Mut. Fire Ins. Co. v. Erie Ins. Exch., 293 Va. 331, 335, 798 S.E.2d 170, 173 (2017);

Dragas Mgmt. Corp. v. Hanover Ins. Co., 798 F. Supp. 2d 766, 772
(E.D. Va. 2011) (citation omitted). And, as is true with other
contracts, insurance policies are to be interpreted "'in
accordance with the intention of the parties gleaned from the words
they have used in the document.'" Evanston Ins. Co., 814 F. Supp.
2d at 643 (quoting Seals v. Erie Ins. Exch., 277 Va. 558, 562, 674
S.E.2d 860, 862 (Va. 2009)). In so doing, courts "must adhere to
the terms of a contract of insurance as written, if they are plain
and clear and not in violation of law or inconsistent with public
policy." Blue Cross & Blue Shield v. Keller, 248 Va. 618, 626, 450
S.E.2d 136, 140 (1994). Nor, in the interpretative process may
courts create "'a new contract for the parties different from that
plainly intended and thus create a liability not assumed by the
insurer.'" Id. (quoting Pilot Life Ins. Co. v. Crosswhite, 206 Va.
558, 559, 145 S.E.2d 143, 145 (1965)).

Insurers, however, "bear the burden of making their contracts
clear" because the policies are often drafted without the input of
the insured entity. Res. Bankshares Corp. v. St. Paul Mercury Ins.
Co., 407 F.3d 631, 636 (4th Cir. 2005). If ambiguity exists "on
the face of the policy", Granite State Ins. Co. v. Bottoms, 243 Va.
228, 233, 415 S.E.2d 131, 134 (1992), then "it must be construed
against the insurer." Res. Bankshares Corp., 407 F.3d at 636.
Ambiguity exists "when, in context, it is capable of more than one
reasonable meaning." Id. However, "courts must not strain to find

9

ambiguities"," id., and "provisions are not ambiguous merely because the parties disagree about their meaning," Nextel Wip Lease Corp. v. Saunders, 276 Va. 509, 516, 666 S.E.2d 317, 321 (2008).

Generally, policyholders bear the burden of substantiating that the claim is covered by the insurance policy. Res. Bankshares Corp., 407 F.3d at 636. Yet, when an insured entity has demonstrated that its loss occurred while the insurance policy was in effect, and the insurer relies upon exclusionary language in the policy as a bar to coverage, the burden is placed upon the insurer to demonstrate that the exclusion applies to the facts of the case. See Elegant Massage, LLC v. State Farm Mut. Auto. Ins. Co., 506 F. Supp. 3d 360, 370 (E.D. Va. 2020) (quoting Bituminous Cas. Corp., 239 Va. 332, 389 S.E.2d 696 (1990)); see also Am. Reliance Ins. Co. v. Mitchell, 238 Va. 543, 547, 385 S.E.2d 583, 585 (1989)("Exclusionary language in an insurance policy will be construed most strongly against the insurer and the burden is upon the insurer to prove that an exclusion applies.").

## B. Virus Exclusion

The Court recently addressed a similar virus exclusion provision and comparable allegations. See L&L Logistics & Warehousing Inc. v. Evanston Ins. Co., No. 3:20-CV-324, 2021 WL1396280 (E.D. Va. Apr. 13, 2021). As in the present case, the plaintiffs in L&L Logistics alleged that their insurance policy

10

covered business income losses incurred due to COVID-19.[2] In L&L Logistics, the clear and explicit language of the virus exclusion in the policy precluded coverage. Essentially the same virus exclusion language is present in the case at hand, and it excludes coverage for Adorn's claims as a matter of law.

## 1. Plain Language of the Contract

The Policy's language clearly includes a Virus Exclusion, which provides that Twin City "will not pay for loss or damage caused directly or indirectly by . . . [p]resence, growth, proliferation, spread or any activity of . . . virus." EX. 1, ("Policy"), ECF No. 1-1 at 135. Twin City takes the view that the plain text of the Virus Exclusion prohibits any claim related to a virus with exceptions for lightning and fire that are not applicable here. In L&L Logistics, the Court dismissed with prejudice similar claims for coverage because "the plain language of the insurance policy [was] unambiguous, and by the unambiguous plain language of the policy, plaintiff's claim based on the harm caused by COVID-19, a virus," was subject to the Virus Exclusion policy. No. 3:20CV-324, 2021 WL 1396280, at *6.

Other federal district courts have held that policies with the Twin City virus exclusion preclude claims for business losses

---

[2] The case also involved a similar Civil Authority provision, but that aspect of L&L Logistics will be discussed later.

related to the COVID-19 pandemic.[3] And, courts within the Fourth Circuit have largely agreed that the virus exclusion language applies in the case of COVID-19 business closures.[4] In general,

---

[3] See, e.g., Q Clothier New Orleans LLC v. Twin City Fire Ins. Co., No. 20-1470, 2021 WL 1600247, at *7 (E.D. La. Apr. 23, 2021) (finding that the policy's virus exclusion bars the plaintiff's claims), appeal docketed, No. 21-30278 (5th Cir. May 25, 2021); Eye Care Ctr. of New Jersey v. Twin City Fire Ins. Co., No. 20-05743, 2021 WL 457890, at *2-3 (D.N.J. Feb. 8, 2021) (same); Ultimate Hearing Sols. II, LLC v. Twin City Fire Ins. Co., No. 20-2401, 2021 WL 131556, at *10 (E.D. Pa. Jan. 14, 2021) (same).

[4] See, e.g., Hamilton Jewelry, LLC v. Twin City Fire Ins. Co., Inc., No. 8:20CV02248-PWG, 2021 WL 421837, at *5 (D. Md. Sep. 16, 2021) (applying Maryland law) (finding that the plaintiff's "claim falls squarely within the exclusionary terms of the Endorsement, which unambiguously bars coverage for loss or damage arising out of a virus."); Cali Fresh, LLC v. Twin City Fire Ins. Co., 1:20-CV-522, 2021 WL 3620074, at *4 (M.D.N.C. Aug. 16, 2021)(applying North Carolina law) (same), appeal filed, (4th Cir. Sep. 1, 2021); Coffey & McKenzie, LLC v. Twin City Fire Ins. Co., No. 2:20-CV-01671-BHH, 2021 WL 1310872, at *2 (D. Md. Apr. 8, 2021) (applying South Carolina law) (noting that "even assuming coverage were triggered[,]" the Virus Exclusion "unambiguously bars the [plaintiff's claims] because the [plaintiff] alleges its losses were caused by a 'virus.'"); Nat'l Coatings & Supply, Inc. v. Valley Forge Ins. Co., No. 5:20-CV-00275-M, 2021 WL 1009305, at *5 (E.D.N.C. Mar. 16, 2021) (applying North Carolina law) (finding that the policy at issue "unambiguously excludes coverage for loss or damage caused directly or indirectly by or resulting from the presence, growth, proliferation, [or] spread of any virus.") (internal quotations omitted); Natty Greene's Brewing Co., LLC v. Travelers Cas. Ins. Co., 503 F. Supp. 3d 359, 364-65 (M.D.N.C. 2020) (applying North Carolina law)(same); Transcript of Record at 16, Barroso, Inc. v. Twin City Fire Ins. Co., Inc., No. 1:20-CV-632 (E.D. Va. Nov. 10, 2020)(dismissing plaintiff's claims per the virus exclusion policy).

federal courts across the country also have upheld virus exclusion provisions in policies issued by other insurers.[5]

On the basis of the foregoing extensive and well-reasoned authority, the Court finds that Adorn's claims for coverage for its business income and expense losses is excluded by the plain language of the Virus Exclusion provision of the Policy.

## 2.  Adorn's Other Theories That The Virus Exclusion Does Not Bar Its Claims

To avoid the effect of the plain text of the Virus Exclusion, Adorn asserts other arguments. They are:

> (a) denying coverage would be contrary to the reasonable expectations of the parties, ECF No. 54 at 18-23;
>
> (b) the Virus Exclusion clause is ambiguous, ECF No 54. at 24; and
>
> (c) regulatory estoppel should be employed for any reliance on the Virus Exclusion clause, FAC ¶ 91, ECF No. 34; ECF No. 54 at 26-27;

---

[5] See, e.g., Hums. & Res., LLC v. Firstline Nat'l Ins. Co., 512 F. Supp. 3d 588, 600 (E.D. Pa. 2021) (barring coverage based on virus exclusion language within the insurer's policy); Boulevard Carroll Ent. Grp., Inc. v. Fireman's Fund Ins. Co., No. 20-11771, 2020 WL 7338081, at *2 (D.N.J. Dec. 14, 2020) (same); Kessler Dental Assocs., P.C. v. Dentists Ins. Co., 505 F. Supp. 3d 474, 478-79 (E.D. Pa. 2020) (same); Brian Handel D.M.D., P.C. v. Allstate Ins. Co., 499 F. Supp. 3d 95, 100 (E.D. Pa. 2020) (same); Mark's Engine Co. No. 28 Rest., LLC v. Travelers Indem. Co. of Conn., 492 F. Supp. 3d 1051, 1054 (C.D. Cal. 2020) (same), appeal docketed, No. 20-56031 (9th Cir. Oct. 6, 2020); Mauricio Martinez, DMD, P.A. v. Allied Ins. Co. of Am., 483 F. Supp. 3d 1189, 1191 (M.D. Fla. 2020) (same); Franklin EWC, Inc. v. Hartford Fin. Servs. Grp., Inc., 488 F. Supp. 3d 904, 907 (N.D. Cal. 2020) (same); Diesel Barbershop, LLC v. State Farm Lloyds, 479 F. Supp. 3d 353, 361 (W.D. Tex. 2020) (same); Border Chicken AZ, LLC v. Nationwide Mut. Ins. Co., 501 F. Supp. 3d 699, 706 (D. Ariz. 2020) (same).

(d) the <u>Elegant Massage</u> decision; and

(f) the Defendant's Renewed Motion to Dismiss is not ripe, ECF No. 54 at 28.

Each argument will be addressed in turn.

## (a) Expectations of the Parties

Adorn argues that denying coverage under the Virus Exclusion would be contrary to the reasonable expectations of the parties. <u>See</u> ECF No. 54 at 18. The starting point for that theory is the assertion that Adorn "specifically sought coverage for business interruption losses and extended expenses and paid premiums for such coverage and with an expectation that the Policy [Adorn] purchased provided such coverage" and that Twin City "did not make any disclosures to the contrary." FAC ¶ 82, ECF No. 34. That, of course, does not establish the expectation of either Adorn or Twin City. Nor does it permit a finding that there existed some mutual expectation at variance with the Policy.

Adorn then argues that, because it "had no part in the drafting of any Policy language" its "reasonable interpretation of the Policy should be favored." ECF No. 54 at 18. Whatever else may be said about that argument, it, at best, addresses only the expectations of Adorn and thus is not probative of the parties' mutually held expectations. Moreover, the argument attempts to reconfigure Virginia contract law because Virginia hews to the rule that, if a policy is ambiguous, then the policy should be

14

interpreted against the insurer, Virginia law just as clearly holds that "contractual provisions are not ambiguous merely because the parties disagree about their meaning." Nextel Wip, 276 Va. at 516, 666 S.E.2d at 321. Here, as explained below, the Policy is not ambiguous with respect either to the Virus Exclusion. And, Adorn's view to the contrary does not alter that finding.

Adorn also asks the Court to consider the intentions of the ISO when drafting the Virus Exclusion template language, asserting that the ISO intended the exclusion to pertain to "losses and damage associated with 'disease' and actual 'contamination' of the insured property rather than a 'pandemic'." ECF No. 54 at 18. Adorn offers no support for its effort to ascribe this meaning to the ISO's guidance. More importantly, the argument ignores the plain language of the Policy.

Like the plaintiffs in L&L Logistics, Adorn also argues that, because the Policy uses the term "virus" and not "pandemic," it would unreasonable to think that the Policy excludes damage or loss caused by COVID-19, a virus that is so widespread as to be a pandemic. ECF No. 54 at 19-20. Yet, as the Court has previously found, "[a] pandemic is a disease, here a virus, 'that occurs over a wide geographic area (such as multiple countries or continents) and typically affects a significant proportion of the population' and . . . a virus that has affected a lot of people in a lot of places." L&L Logistics, No. 3:20CV-324, 2021 WL 1396280, at *6.

15

Nothing in the Virus Exclusion suggests that it becomes inoperative when a virus turns into a pandemic. Thus, the policy language, given its plain meaning, controls here. In sum, the expectations of the parties' argument is without merit.

**(b) Ambiguity of the Virus Exclusion**

In a closely related argument that incorporates much of the "reasonable expectations" theme, Adorn asserts the that the "Virus Exclusion is ambiguous, raising questions as to its intended meaning, or even whether its approval was obtained using false or misleading statements." ECF No 54. at 24. The thrust of this argument is a request that the Court evaluate "statements made to regulators to determine whether the exclusion clause was properly intended to exclude losses such as Plaintiff's or losses related to a pandemic," as well as "statements made to regulators to determine whether the insurers intended to exclude such coverage." Id. at 25.

Here too basic principles of Virginia law supply the basis for rejecting Adorn's ambiguity argument. The starting point is that unambiguous exclusions are to be enforced. See, e.g., Gulf Underwriters Ins. Co. v. KSI Servs., Inc., 233 F. App'x 239, 241 (4th Cir. 2007) ("The policy language excluding coverage for damages arising 'directly or indirectly' out of criminal acts contemplates multiple causes of liability . . . . Thus, so long as one of the direct or indirect causes of the loss was a criminal

16

act, the exclusion operates to deny coverage."); Day v. Mount
Vernon Fire Ins. Co., No. 1:12CV669-LMB/IDD, 2013 WL 314827, at *4
(E.D. Va. Jan. 23, 2013) (noting that Virginia law requires courts
to employ the "well established rule that when the language in an
insurance policy is clear and unambiguous, courts do not employ
rules of construction; rather, they give the language its plain
and ordinary meaning and enforce the policy as written") (citation
omitted); PBM Nutritionals LLC v. Lexington Ins. Co., 283 Va. 624,
724 S.E.2d 707 (2012) (affirming verdict that pollution exclusion
barred coverage). Further, "courts interpret insurance policies .
. . in accordance with the intention of the parties gleaned from
the words they have used in the document." Seals, 277 Va. at 562,
674 S.E. 2d at 862 (internal quotations omitted).

     Accordingly, "when the language in an insurance policy is
clear and unambiguous, courts . . . give the language its plain
and ordinary meaning and enforce the policy as written." Selective
Way Ins. Co. v. Crawl Space Door Sys., Inc., 162 F. Supp. 3d 547,
551 (E.D. Va. 2016). The courts may not read in a new
interpretation that creates a new contract accompanied by new
liabilities. See Keller, 248 Va. at 626, 450 S.E.2d at 140. Here,
the Court need not look any further into the intent of the parties
because the Policy accompanied by the Virus Exclusion language is
clear and unambiguous. Extrinsic evidence to the contrary, such as
the ISO's intentions, does not change that conclusion because there

17

is no "latent ambiguity" present in the Policy. See <u>S. Ins. Co. of</u> <u>Virginia v. Williams</u>, 263 Va. 565, 570, 561 S.E.2d 730, 733 (2002).

**(c) Regulatory Estoppel**

Adorn then urges the application of the doctrine known as "regulatory estoppel." This argument is based on conclusory allegations that the insurance industry and ISO misrepresented "whether the exclusions would actually bar coverage or merely clarify coverage in order to raise premiums." ECF No 54. at 27. Adorn has cited no decision in which Virginia has subscribed to the regulatory estoppel theory. And, as explained in Subsection B.1 above, the clear text of the policy applies to foreclose the application of the theory. That, under Virginia law, is controlling so the regulatory estoppel theory does not help Adorn.[6]

**(d) The Elegant Massage Decision**

Adorn relies significantly on the decision in <u>Elegant</u> <u>Massage</u>, 506 F. Supp. 3d at 360, in which the court held that COVID-19 coverage was available under a policy requiring a "direct physical loss" and then denied the insurer's motion to dismiss because the virus exception in the all-risk insurance policy did

---

[6] That same rationale has been applied elsewhere to reject similar arguments. See, e.g., <u>Cali Fresh</u>, 1:20-CV-522, 2021 WL 3620074, at *7, *9 (applying North Carolina law) (finding the plaintiff's regulatory estoppel argument unpersuasive because North Carolina has not adopted the doctrine); <u>Natty Greene's Brewing Co.</u>, 503 F. Supp. 3d at 369 (same); <u>Julie's Inc.</u>, 1:20-CV-85, 2021 WL 2312532 (same). Those decisions are persuasive.

not apply. Although, as Adorn argues, there are many parallels in the fact patterns in the present case and the Elegant Massage case, the decision in Elegant Massage does not help Adorn because Elegant Massage hinged on whether the mandated closures based on the Civil Authority Order qualified as a "fortuitous loss[,]" which caused direct physical loss to the plaintiff's property. Id. at 371-72. Thus, the court evaluated whether the term "direct physical loss" in that policy was ambiguous and declined to apply the virus exclusion because Virginia has not adopted the so-called "anticoncurrent theory". Id. at 378.

However, it is not necessary in this case to interpret the "spectrum of legal definitions" discussed in Elegant Massage because the meaning of "direct physical loss" does not negate the Virus Exclusion language in the Twin City policy at issue here. The Policy, like all contracts, must be read as a whole, rather than as siloed provisions. See Virginia Farms Bureau Mut. Ins. Co. v. Williams, 278 Va. 75, 80, 677 S.E.2d 299, 302 (2006) (holding that "provisions of an insurance policy must be considered and construed together"). And, here, the plain language of the Virus Exclusion precludes Adorn's business income loss and extra expense claims. Viewing the Virus Exclusion in perspective of the fortuitous loss or direct physical loss language that drove the result in Elegant Massage does not alter that result. Although no evaluation of "direct physical loss" is necessary, in perspective

19

of the plain Virus Exclusion text, a growing body of federal courts have determined that "physical loss" does not incorporate viruses.[7] These significant authorities are persuasive. And, if they were applied here, they would foreclose Adorn's position.

---

[7] Gilreath Fam. & Cosm. Dentistry, Inc. v. Cincinnati Ins. Co., No. 1:20-cv-02248-JPB, 2021 WL 3870697 (11th Cir. Aug. 31, 2021) (affirming the district court's decision to dismiss because the plaintiff did not allege "any 'direct physical loss or damage' to property, as necessary for coverage under the policy"); Oral Surgeons, P.C. v. Cincinnati Ins. Co., 2 F.4th 1141 (8th Cir. 2021) (same); Santo's Italian Café LLC v. Acuity Ins. Co., No. 1:20-cv-01192, 2021 WL 4304607 (6th Cir. Sep. 22, 2021) (same); Skillets, No. 3:20CV678-HEH, 2021 WL 92611, at *6, *7 (applying Florida law) (finding that the plaintiff's "inability to allege a direct physical loss is similarly fatal to its allegations under other Policy provisions" and that the "presence of COVID-19 on restaurant surfaces, even if sufficiently alleged, does not change, alter, or damage" the plaintiff's property); Bel Air Auto Auction, Inc. v. Great N. Ins. Co., No. RDB-20-2892, 2021 WL 1400891, at *8 (D. Md. Apr. 14, 2021), appeal filed, No. 21-1493 (4th Cir. Apr. 29, 2021) (finding that courts have overwhelmingly held that the term "direct physical loss or damage" necessitates "tangible, physical losses to the property or, at the very least, permanent dispossession of the property rendered unfit or uninhabitable by physical forces"); Cordish Cos., Inc. v. Affiliated FM Ins. Co., No. ELH-20-2419, 2021 WL 3883595 (D. Md. Aug. 31, 2021) (listing seven federal courts that rejected COVID-19 related insurance claims based on the fact that "the virus does not cause physical alteration of property because it can be cleaned and eliminated from surfaces.") (citing to Barbizon Sch. of San Francisco, Inc. v. Sentinel Ins. Co. LTD, No. 20-cv-08578-TSH, 2021 WL 1222161, at *9 (N.D. Cal. Mar. 31, 2021); Kevin Barry Fine Art Assocs. v. Sentinel Ins. Co., 513 F. Supp. 3d 1163, 1171 (N.D. Cal. 2021); Terry Black's Barbeque, LLC v. State Auto. Mut. Ins. Co., 514 F. Supp. 3d 896, 907 (W.D. Tex. 2020); Uncork & Create LLC, 498 F. Supp. 3d at 883; Promotional Headwear Int'l v. Cincinnati Ins. Co., 504 F. Supp. 3d 1191, 1202 (D. Kan. 2020); Pappy's Barber Shops, Inc. v. Farmers Grp., Inc., 491 F. Supp. 3d 738, 740 (S.D. Cal. 2020); Mama Jo's, Inc. v. Sparta, No. 17-cv-23362-KMM, 2018 WL 3412974, at *9 (S.D. Fla. 2018), aff'd, 823 F. App'x 868 (11th Cir. 2020)).

[7]

Accordingly, the decision in <u>Elegant Massage</u> does not control here.

**(e)  Ripeness**

In its RESPONSE MEMORANDUM, Adorn argues that Twin City's RENEWED MOTION TO DISMISS is not ripe because there are complex, material factual issues that must be subject to discovery. <u>See</u> ECF No. 54 at 28. According to Adorn, these issues include: "whether there exists physical loss or damage, the mechanism by which the coronavirus and COVID-19 cause property damage and illness, the infectiousness and health risks of COVID-19, and the expense that is necessary for remediation[.]" <u>Id.</u> at 28. The factual issues to which Adorn alludes, however, need not be decided for the Court to conclude that Adorn's claims are precluded by the plain text of the insurance policy. Hence, the absence of discovery does not necessitate either denial or postponement of the motion.

**3. Civil Authority Coverage**

According to Adorn, the second source of insurance coverage relevant to this litigation is the Policy's Civil Authority Coverage. EX. 1 ("Policy") at 48, ECF No. 1-1; ECF No. 54 at 6. That coverage "is triggered 'where access to [the insured property] is specifically prohibited by order of a Civil Authority as the direct result of a Covered Loss to Property in the immediate area of [the insured property]." <u>Id.</u> That coverage is available, says

Adorn, because "the Civil Authority Order" is one of two alleged causes of its losses. Id.[8]

The Civil Authority provision does afford coverage for actual loss of business income and expense in certain circumstances. In particular, there is coverage if the insured sustains Business Income "when access to the insured premises" is specifically prohibited by order of a Civil Authority as the direct result of a Covered Cause of Loss to property in the immediate area of "the insured premises." EX. 1 ("Policy") at 48, ECF No. 1-1.

To begin, the FAC does not allege that the claimed business and expense losses were "sustained when access to [the insured premises was] specifically prohibited by order of a Civil Authority as a direct result of a Covered Loss to property in the immediate area" of the insured premises.[9] Thus, the FAC, as to the asserted Civil Authority coverage, fails for that reason alone.

Second, the Civil Authority coverage comes into play because of its predicate and the Policy's Virus Exclusion. According to

---

[8] The other is "the coronavirus and COVID-19." Id. That coverage, as explained in Subsection B.1 above is excluded by the Virus Exclusion.

[9] In paragraph 80 of the FAC, it is alleged that: "[e]ven with the entry of these Civil Authority Orders there remained physical impact not only in and within Plaintiff's business property but in and around the surrounding location of Plaintiff's business property in light of COVID-19 presence not being detectable other than through microscopic means, and occurrence of illness." That, however, does not plead the requisites for coverage under the Civil Authority provision.

22

the FAC, the Civil Authority coverage applies because the Civil Authority Orders were precipitated by the virus. That, of course, is true, and it is also just a way of saying that the virus was a contributing cause of the loss caused by Civil Authority Orders. In other words, the FAC, reasonably construed, alleges that the virus was an indirect cause of the business and expense losses claimed by Adorn. However, the Virus Exclusion applies to "loss or damage caused directly or indirectly by" the "[p]resence, growth, proliferation, spread or any activity of . . . virus." EX. 1 ("Policy") at 135, ECF No. 1-1 (emphasis added), and the Virus Exclusion, therefore, operates to exclude coverage "regardless of any other cause or event that contributes concurrently or in any sequence to the loss". Id. Therefore, the plain language of the Policy necessitates the conclusion that, because COVID-19 precipitated the Civil Authority Orders, it was an indirect cause of Adorn's losses and, as explained above, the Virus Exclusion excludes coverage for those losses.

Adorn next argues that, if a virus happened to prompt the Civil Authority Order, Twin City should compensate for Adorn's business income loss and extra expense caused by the Civil Authority Order, even if damage to property caused by a virus is not covered. See ECF No. 54 at 17. That argument, however, is inconsistent with the language of the Policy which clearly forecloses a policyholder from recovering "loss or damage" caused

23

by a virus, including through the Civil Authority provision. <u>Id.</u>
at 136.

> Finally, Adorn argues that Twin City
>
> > has not cited any case law outside of the developing
> > area of COVID-19 business interruption insurance
> > holding that the tenuous connection between an
> > excluded cause of loss prompting a Civil Authority
> > Order, the institution of a Civil Authority Order, and
> > business income loss or extra expense resulting from
> > the Civil Authority Order can preclude coverage.

ECF No. 54 at 17. That argument is not persuasive precisely because
the burgeoning body of COVID-19 cases assessing policy coverage
decisions in like situations is more persuasive on that issue than
non-COVID-19 insurance cases.[10] Moreover, the decisions that deal
with coverage in cases where COVID-19 (either the virus or Civil
Authority Orders, or both) is alleged to be a cause of the loss
provide a base of authority that is a sound ground upon which to
base coverage decisions where, as here, the virus and Civil
Authority Orders are the key issues.'

---

[10] <u>See</u> <u>supra</u> Section B.1 Plain Language of the Contract (delineating
federal court decisions denying COVID-19 insurance claims brought
under policies with virus exclusion clauses).

## CONCLUSION

For the foregoing reasons, DEFENDANT TWIN CITY FIRE INSURANCE COMPANY'S RENEWED RULE 12(b)(6) MOTION TO DISMISS (ECF No. 52) will be granted.[11]

It is so ORDERED.

_____   /s/   REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: October 18, 2021

---

[11] Adorn discusses other policy provisions such as Covered Causes of Loss which need not be addressed because of the controlling application of the Virus Exclusion and the Civil Authority provisions of the Policy.